## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKALHOMA

CITY OF MIDWEST CITY, a body )
corporate and politic, and a duly constituted )
and qualified municipality, and MIDWEST )
CITY URBAN RENEWAL AUTHORITY, a )
public body corporate, )
                                    )
      Plaintiffs, )
                                      )
vs. )
                                      )
HOUSE OF REALTY, INC.; ROBERT J. )
BARTON; ROBERT J. "BOB" BARTON, )
TRUSTEE OF THE ROBERT J. "BOB" )
BARTON REVOCABLE TRUST, DATED )
SEPTEMBER 23, 1992; PAMELA L. )
BARTON-STOBER; DOUGLAS D. )
STOBER; KATHY L. GIVENS; )
SHARLETTE R. MADISON; JEFFREY C. )
TACKETT; HARLAN DRAKE; PHILLIS )
CASEY; KEITH CASEY; LARRY )
PHILLIPS; IRIS JONES, DONNA )
GUNTER; DIANE FRITH; RICHARD )
SPRIGGS; LEONARD SEWELL; ARTHUR )
LEWIS; DANNY WATSON; MYRON )
NICEWANDER; WILLIAM KLUKOSKE; )
LAWRENCE HAWKINS; FORREST )
FREEMAN, COUNTY TREASURER OF )
OKLAHOMA COUNTY; and BOARD OF )
COUNTY COMMISSIONERS OF )
OKLAHOMA COUNTY, )
                                      )
      Defendants. )

Case No. CJ-2004-9568

FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.

NOV 2 3 2004

PATRICIA PRESLEY, COURT CLERK
by _____
              Deputy

## PETITION TO SELECT AND SUMMON COMMISSIONERS

Plaintiffs City of Midwest City ("City") and Midwest City Urban Renewal Authority

("Authority"), for their cause of action against the Defendants, allege and state as follows:

    1.    The certain private properties sought to be acquired in this action by Plaintiffs

are identified on Exhibit 1, attached hereto ("Property").

DEFENDANTS'
EXHIBIT 2

2.      The Property was subject to a condemnation action brought by the City in this Court styled and numbered, *City of Midwest City v. House of Realty, Inc., et al.*, CJ-2001-4916 ("CJ-2001-4916"), which was assigned to the Honorable Dan Owens.

      a.      The individual defendants in CJ-2001-4916 objected to the Report of Commissioners and challenged the City's authority to condemn. After their objection was overruled, the individual defendants filed an interlocutory appeal to the Oklahoma Supreme Court.

      b.      In *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, the Oklahoma Supreme Court held that the City "did not possess authority pursuant to its general eminent domain powers to condemn the property apart from those statutes regulating the joint conduct of municipalities and public trusts when removing blighted property and creating economic redevelopment." 2004 OK 56 at ¶0. The Supreme Court determined that the Oklahoma Urban Renewal Law, 11 O.S. § 38-101, *et seq.*, is one of two such statutes under which the authority to condemn for redevelopment exists. Accordingly, the orders under which demolition of the structures on the Property occurred on or about April 30, 2004, were reversed on June 29, 2004.

      c.      In response, the City and the Authority filed a joint motion to supplement the pleadings to reflect the Authority as the condemning entity pursuant to the Urban Renewal Law and to permit the Authority to intervene in CJ-2001-4916. The joint motion was heard on November 19, 2004, after the Supreme Court Mandate was filed in CJ-2001-4916. Judge Owens announced from the bench that Case CJ-2001-4916 was at an end, that the Authority and the City would have to file a new condemnation case, that the individual defendants, if they wished to recover damages for structures demolished pursuant

to orders issued in CJ-2001-4916, would have to file an inverse condemnation action and that such cases would be consolidated before him.

        d.      The Property that is the subject of this action is part of the "historic downtown area" of the City of Midwest City. Prior to the individual defendants' interlocutory appeal in CJ-2001-4916, the City had declared its intention to undertake redevelopment of its "historic downtown area" (the "Project Area") pursuant to the Local Development Act, 62 O.S. § 850, *et seq.* On May 28, 2002, the City found that the Project Area suffered from blighting conditions identified in the Urban Renewal Law, 11 O.S. § 38-101(8). On August 27, 2002, the City enacted Ordinance No. 2852, which approved the Midwest City Downtown Redevelopment Project Plan for the Project Area, specifically determining the Project Area "blighted" within the meaning of the Urban Renewal Law.

        e.      On October 12, 2004, through the enactment of Ordinance No. 2936, the City amended the Midwest City Downtown Redevelopment Project Plan to authorize condemnation by the Urban Renewal Authority under the Urban Renewal Law, 11 O.S. § 38-101, *et seq.* *See* Ordinance No. 2936 with Amended Midwest City Downtown Redevelopment Project Plan, attached as Exhibit 2.

        f.      Thus, the instant action seeks condemnation of the same Property in the same Project Area under the same Project Plan as was before this Court in CJ-2001-4916.

        g.      Because of the foregoing, and pursuant to Rule 8 of the Rules of the Seventh Judicial District, this case should be returned to Judge Owens.

        3.      In *City of Midwest City v. House of Realty, Inc.,* 2004 OK 56, the Supreme Court stated:

A.     "[A] municipality may achieve urban renewal through the mechanism of an Urban Renewal Authority" and "[a]n urban renewal authority may exercise the power of eminent domain. 11 O.S.2001 § 38-111(A)." *Id.* at ¶24.

B.     The Oklahoma Urban Renewal Law "requires that the factors used to show the presence of a blighted area have at least one of four effects on the municipality: substantial impairment of growth, economic or social liability, danger to life or property, or conduciveness to disease or social disorder. 11 O.S.2001 § 38-101(8)." *Id.* at ¶31.

C.     "[A]n urban renewal plan may be adopted by a municipal governing body if it finds that '[a] feasible method exists for the relocation of families and businesses who will be displaced from the urban renewal area in decent, safe and sanitary accommodations within their means and without undue hardship to such families and businesses....' 11 O.S.2001 § 38-106(E)." *Id.* at ¶32.

4.     Acting on the guidance of this decision, the City elected to authorize the powers of its urban renewal authority, which approved the entity entitled the "Midwest City Urban Renewal Authority," and also directed the preparation of an urban renewal plan, pursuant to the Urban Renewal Law, 11 O.S. § 38-101, *et seq.* The Authority approved the Midwest City Downtown Urban Renewal Plan ("Urban Renewal Plan"), attached as Exhibit 3, in accordance with the Urban Renewal Law.   On October 12, 2004, the City Council passed Resolution No. 2004-25, attached as Exhibit 4, which adopted and approved the Urban Renewal Plan and made the specific findings that:

A.     The Project Area is and was blighted and detrimental to the public health, safety, morals or welfare as a result of a combination of following factors which impair or arrest the sound growth of the City of Midwest City and constitute an economic and social liability: arrested economic development, dilapidation, deterioration, age and obsolescence, depreciation of physical maintenance, presence of structures below minimum code standards, abandonment, non-functioning or inappropriately developed structures, inadequate utilities, deleterious land use or layout, faulty lot layout in relation to size, adequacy of accessibility or usefulness, insanitary or unsafe conditions, deterioration of site or other improvements, improper subdivision or obsolete platting of land, improper street layout in terms of existing or projected needs, and lack of parking needed for existing or proposed land uses

4

in the area, predominance of defective street layouts and lack of community planning.

B.      The Relocation Plan provisions in the Urban Renewal Plan and the Relocation Policies and Procedures adopted by the Midwest City Urban Renewal Authority provide a feasible method for the relocation of individuals, families, and businesses that may be displaced from the Project Area pursuant to the Urban Renewal Plan in decent, safe and sanitary accommodations within their means and without undue hardship to such individuals, families, and businesses.

C.      It is necessary, appropriate, and desirable to authorize the Authority to acquire property by eminent domain as provided in the Urban Renewal Plan, and the City Council hereby specifically identifies, pursuant to the Oklahoma Urban Renewal Law, 11 O.S. § 38-111(C), the parcels or tracts of unimproved real property, which it authorizes the Midwest City Urban Renewal Authority to acquire through eminent domain.

5.      On October 13, 2004, the Urban Renewal Authority approved Resolution No. URA 2004-07, attached as Exhibit 5, which authorizes the acquisition of specified parcels of land in accordance with the Urban Renewal Plan, including the Property that is the subject of this action.

6.      Plaintiff City is a duly constituted and qualified municipality under the laws of the State of Oklahoma, operating under a home rule charter, created and existing pursuant to 11 O.S. § 22-101, *et seq*.  Plaintiff City is authorized and empowered by the Constitution and statutes of the State of Oklahoma and by the Charter of the City of Midwest City to acquire by condemnation such lands or parts thereof or rights therein for any necessary purpose. Plaintiff City has deemed advisable and necessary to own the west ten (10) feet of the Property ("Right of Way") for use as public right-of-way and incidental uses thereto.  In addition, Plaintiff City is authorized and empowered by the Urban Renewal Law, 11 O.S. § 38-109(D), to do and perform any or all of the actions or things that such public agencies or

5

public bodies are authorized to do or perform in order to aid in the planning, undertaking or carrying out of an urban renewal project.

7.      Plaintiff Authority is a public body corporate and a qualified entity under the laws of the State of Oklahoma, created and existing pursuant to the Oklahoma Urban Renewal Law, 11 O.S. § 38-101, *et seq*. The Authority is authorized and empowered under the Oklahoma Urban Renewal Law and Midwest City Downtown Urban Renewal Plan to acquire by condemnation specified property. The Supreme Court recognized this power in this case when it stated that a municipality may achieve urban renewal through the mechanism of an Urban Renewal Authority, which may exercise the power of eminent domain. *House of Realty*, 2004 OK 56 at ¶24. Plaintiff Authority has deemed advisable and necessary to own, in fee simple, the Property for redevelopment in accordance with the Midwest City Downtown Urban Renewal Plan.

8.      The Defendant, Robert J. "Bob" Barton, Trustee of the Robert J. "Bob" Barton Revocable Trust, dated September 23, 1992, is the apparent record owner of the Property pursuant to a quitclaim deed, dated June 9, 2003 from House of Realty, Inc.

9.      The Defendants, House of Realty, Inc., Robert J. Barton, Pamela L. Barton-Stober, Douglas D. Stober, Kathy L. Givens, Sharlette R. Madison and Jeffrey C. Tackett, may claim some interest in or to the Property.

10.      The following Defendants may claim some interest in or to the Property as tenants thereof, or otherwise, and are named as Defendants for the purpose of terminating any such tenancies and permitting said Defendants to share, if appropriate, in any award of compensation for the Property:

        (a)      Harlan Drake;

6

(b)     Phillis Casey;

(c)     Keith Casey;

(d)     Larry Phillips;

(e)     Iris Jones;

(f)     Donna Gunter;

(g)     Diane Frith;

(h)     Richard Spriggs;

(i)     Leonard Sewell;

(j)     Arthur Lewis;

(k)     Danny Watson;

(l)     Myron Nicewander;

(m)     William Klukoske; and

(n)     Lawrence Hawkins.

11.     Defendants Forrest Freeman, County Treasurer of Oklahoma County, and the Board of County Commissioners of Oklahoma County may claim some interest in the Property or in the Commissioners' award rendered herein by virtue of ad valorem taxes which may be due or payable.

12.     Prior to the commencement of this action, Plaintiff City endeavored in good faith to acquire by purchase the Property from the Defendant who is its record owner and has given the Defendant an opportunity to sell the Property, but that Defendant has refused and is unwilling to sell the Property to Plaintiff City.  Plaintiff Authority has tendered an offer in good faith to acquire the Property from the Defendant record owner of the Property, which offer has not been accepted.  By reason thereof, it is necessary, in order for Plaintiff

7

Authority to acquire fee title to the Property and for Plaintiff City to acquire the Right of Way, to exercise their right of condemnation as to the Property.

13.    In accordance with the provisions of the adopted Midwest City Downtown Urban Renewal Plan and the Midwest City Urban Renewal Authority Relocation Policy and Procedures, Plaintiff Authority will pay or reimburse moving costs incurred by eligible Defendants and provide relocation assistance and benefits as provided therein.

WHEREFORE, Plaintiffs pray for an Order of this Court appointing three disinterested freeholders of Oklahoma County, Oklahoma, to be selected by the Court as Commissioners, and who are not interested in a like question, to inspect the Property pursuant to instructions from the Court and to consider the injury that the owner of the Property will or may sustain by reason of the appropriation of the Property, including demolition of structures thereon, and to determine just compensation due to the owner, and that upon payment to the Court Clerk of such sum as may be assessed and reported herein, fee title to the Property be vested in Plaintiff Authority and the Right of Way be vested in Plaintiff City, and Plaintiffs be authorized to enter upon the Property and to take, appropriate and use the same for the public purposes set forth above.

Katherine E. F. Bolles, OBA #13968
City Attorney
100 North Midwest Boulevard
Midwest City, Oklahoma 73110
Telephone: (405) 739-1203

- and -

MOCK, SCHWABE, WALDO, ELDER, REEVES
& BRYANT, a Professional Limited Liability
Company

By: _____

     James R. Waldo, OBA #9278
     Fourteenth Floor
     Two Leadership Square
     211 North Robinson
     Oklahoma City, Oklahoma 73102
     Telephone: (405) 235-1110

          ATTORNEYS FOR PLAINTIFF,
          CITY OF MIDWEST CITY

- and -

CENTER FOR ECONOMIC DEVELOPMENT LAW

By: _____

     James Dan Batchelor, OBA #594
     Leslie V. Batchelor, OBA #15722
     John C. McMurry, OBA #6069
     Emily K. Pomeroy, OBA #19912
     301 N. Harvey, Suite 200
     Oklahoma City, Oklahoma 73102
     Telephone: (405) 232-4606

          ATTORNEYS FOR PLAINTIFF,
          MIDWEST CITY URBAN
          RENEWAL AUTHORITY

# EXHIBIT 1

## THE PROPERTY

Part of the Southwest Quarter (SW/4) of Section Ten (10), Township Eleven (11) North, Range Two (2) West of the Indian Meridian, Oklahoma County, Oklahoma, more particularly described as follows:  Beginning at a point on West line of said Quarter Section North 00°08'37" East a distance of 330 feet from SW corner of said Quarter Section; thence South 89°30'37" East a distance of 440 feet; thence North 00°08'37" East a distance of 175 feet; thence North 89°30'37" West a distance of 440 feet to a point on West line of said Quarter Section; thence South 00°08'37" West along the West line of said Quarter Section a distance of 175 feet to point of beginning.

EXHIBIT 1

# ORDINANCE NO. 2936

AN EMERGENCY ORDINANCE CLARIFYING AND AMENDING ORDINANCE NO. 2852 WHICH ADOPTED THE MIDWEST CITY DOWNTOWN REDEVELOPMENT PROJECT PLAN AND ESTABLISHED INCREMENT DISTRICT NO. 1, CITY OF MIDWEST CITY; AUTHORIZING THE MIDWEST CITY URBAN RENEWAL AUTHORITY TO IMPLEMENT CERTAIN PROVISIONS OF THE PROJECT PLAN; APPROVING THE AMENDED MIDWEST CITY DOWNTOWN REDEVELOPMENT PROJECT PLAN TO CONFORM WITH THIS ORDINANCE; DETERMINING THE AMENDMENTS TO BE MINOR AMENDMENTS; PROVIDING SEVERABILITY; AND DECLARING AN EMERGENCY.

## EMERGENCY ORDINANCE

WHEREAS, pursuant the Local Development Act, Title 62, Oklahoma Statutes, Section 850, et seq., the Council of the City of Midwest City ("City") adopted the Midwest City Downtown Redevelopment Project Plan ("Project Plan") and Increment District No. 1, Midwest City, by Ordinance No. 2852, on August 27, 2002; and

WHEREAS, the Midwest City Memorial Hospital Authority (the "Authority"), pursuant to the approved Project Plan, and the Midwest City Urban Renewal Authority ("MWCURA"), pursuant to the approved Midwest City Downtown Urban Renewal Plan, have been authorized and designated to assume certain implementation responsibilities with respect to the Project Plan; and

WHEREAS, the project area has been determined to be unproductive, underdeveloped and blighted in accordance with Article 10, § 6C of Oklahoma constitution, the Local Development Act and the Oklahoma Urban Renewal Law, 11 O.S. § 38-101(8); and

WHEREAS, it is a common objective of the City, the Authority and MWCURA to eliminate and prevent the recurrence of conditions of blight by undertaking the assembly, clearance and redevelopment of the project area, and create economic growth; and

WHEREAS, the City, pursuant the Local Development Act, 62 O.S. § 858(D), reserved for itself the ability to make minor amendments to the Project Plan; and

WHEREAS, in accordance with the Local Development Act, an amendment to a project plan is a minor amendment if such amendment does not change the character or purpose of the plan, does not, on a cumulative basis, affect more than five percent (5%) of the increment district area or does not affect more than five percent (5%) of the public cost of the plan; and

WHEREAS, minor amendments reallocating estimated project costs will allow the funding of project costs in the continued furtherance of the Project Plan without an increase or decrease in the total authorized project costs; and

WHEREAS, the proposed amendments contained in the Amended Midwest City Downtown Redevelopment Project Plan ("Amended Project Plan" dated October 12, 2004) are minor amendments; and

WHEREAS, it is desirable in the public interest to approve the Amended Project Plan; and

WHEREAS, the City Council of the City of Midwest City deems it appropriate, desirable and within the character and purpose of the Project Plan to amend and clarify Ordinance No. 2852 with respect to the Midwest City Redevelopment Project Plan, designating the Midwest City Urban Renewal Authority as an entity authorized to implement certain provisions of the Project Plan and to assist the Project Plan's objective to eliminate and prevent reoccurrence of conditions of blight;

NOW, THEREFORE, BE IT ENACTED by the City Council of the City of Midwest City:

**SECTION 1.** That Section 10 of Ordinance No. 2852 is hereby amended to read as follows:

EXHIBIT 2

The Midwest City Urban Renewal Authority is authorized to acquire redevelopment project property within the Increment District pursuant to the Local Development Act, 62 O.S. § 850, *et esq.*, Oklahoma Urban Renewal Law, 11 O.S. 38-101(8) and the approved Midwest City Downtown Urban Renewal Plan.

**SECTION 2**. That Section 11 of Ordinance No. 2852 is hereby amended to read as follows:

The Midwest City Memorial Hospital Authority, a public trust, and the Midwest City Urban Renewal Authority, a public body corporate, shall have the authority to carry out certain provisions of the Project Plan, as authorized by Section VIII, A and B of the Project Plan, to incur project costs pursuant to Section X of the Project Plan and to utilize tax increments apportioned annually or from time to time to pay costs directly without incurring debt.

**SECTION 3**. That Section 12 of Ordinance No. 2852 is hereby amended to read as follows:

The Midwest City Memorial Hospital Authority, a public trust, shall have the authority to carry out certain provisions of the Project Plan, as authorized in Section VIII B of the Project Plan, to incur project costs pursuant to Section X of the Project Plan and also, if feasible and desirable, to issue tax apportionment bonds or notes, incur the costs of issuance of such bonds and accumulate appropriate reserves, if any, in connection with such bonds, and provide funds to or reimburse the City of Midwest City or Midwest City Urban Renewal Authority for the acquisition of redevelopment project property and payment of project costs, as provided by Section VII C of the Project Plan.

**SECTION 4**. That the Amended Project Plan is approved including specifically Section X of the Project Plan to adjust project costs without an increase or decrease in the total authorized project costs, and such amendments are determined to be minor amendments as defined in the Local Development Act.

**SECTION 5. SEVERABILITY.** If any section, subsection, sentence, clause, phrase or portion of this ordinance is for any reason held invalid or unconstitutional, such portion shall not affect the validity of the remaining portions of the ordinance.

**SECTION 6. EMERGENCY.** **WHEREAS,** it being immediately necessary for the preservation of the peace, health and safety, and the public good of the City of Midwest City, and the inhabitants thereof, that the provisions of this ordinance be put into full force and effect, an emergency is hereby declared to exist, by reason whereof this ordinance shall take effect and be put in full force from and after the date of its passage as provided by law.

**INTRODUCED and CONSIDERED** in open meeting of the Council of the City of Midwest City on this 12th day of October, 2004.

**PASSED** by the Council of the City of Midwest City this 12th day of October, 2004.

_____
EDDIE O. REED, Mayor

ATTEST:

_____
JUDY REDMAN, Deputy City Clerk

APPROVED as to form and legality this 12th day of October, 2004.

_____
KATHERINE BOLLES, City Attorney

"I CERTIFY THAT THIS IS A TRUE AND LIKE COPY OF A INSTRUMENT ON FILE IN THE OFFICE OF THE CITY CLERK OF THE CITY OF MIDWEST CITY OKLAHOMA COUNTY STATE OF OKLAHOMA"

_____
CITY CLERK

2

October 12, 2004



## AMENDED
## MIDWEST CITY DOWNTOWN REDEVELOPMENT
## PROJECT PLAN

### PREPARED BY:

### THE CITY OF MIDWEST CITY
OFFICE OF THE MAYOR AND CITY COUNCIL
CHARLES JOHNSON, CITY MANAGER
J. GUY HENSON, DIRECTOR OF DEVELOPMENT SERVICES
RUSSELL SMITH, REDEVELOPMENT COORDINATOR
BILLY HARLESS, COMPREHENSIVE PLANNER
KATHERINE BOLLES, CITY ATTORNEY

### WITH THE ASSISTANCE OF:

### THE CENTER FOR ECONOMIC DEVELOPMENT LAW
301 NORTH HARVEY, SUITE 200
OKLAHOMA CITY, OKLAHOMA 73102
(405) 232-4606
econlaw@econlaw.biz

# INDEX

I.     DESCRIPTION OF PROJECT     1

II.     PROJECT AREA AND INCREMENT DISTRICT BOUNDARIES     2

III.     ELIGIBILITY OF PROJECT     2

IV.     OBJECTIVES     2

V.     FINANCIAL IMPACTS     3

VI.     STATEMENT OF PRINCIPAL ACTIONS     3

VII.     ESTABLISHMENT OF INCREMENT DISTRICT NO. 1,
CITY OF MIDWEST CITY     4

VIII.     PROJECT AND INCREMENT DISTRICT AUTHORIZATIONS     4

IX.     ALLOCATION OF THE APPORTIONED INCREMENT     5

X.     BUDGET OF ESTIMATED PROJECT COSTS TO BE
FINANCED FROM INCREMENT DISTRICT NO. 1     6

XI.     FINANCING REVENUE SOURCES     7

XII.     PUBLIC REVENUE ESTIMATED TO ACCRUE
FROM THE PROJECT     7

XIII.     PRIVATE AND PUBLIC INVESTMENTS EXPECTED
FOR THE PROJECT     7

XIV.     MISCELLANEOUS PROVISIONS     7

REFERENCES     8

**EXHIBIT A**   Map of Midwest City Downtown Redevelopment Project Area and Increment District

**EXHIBIT B**   Project Boundaries Description

**EXHIBIT C**   Project Development in the Project Area and Increment District

**EXHIBIT D**   Midwest City Downtown Illustrative Site Development Plan

**EXHIBIT E**   Land Use

**EXHIBIT F**   Structural Conditions

**EXHIBIT G**   Proposed Changes in Zoning

**EXHIBIT H**   Proposed Changes in Master Plan

**AMENDED**
**MIDWEST CITY DOWNTOWN REDEVELOPMENT**
**PROJECT PLAN**

## I.   DESCRIPTION OF PROJECT

This project shall consist of the redevelopment and revitalization of the original downtown area of Midwest City and the generation and creation of "Town Center Plaza at Midwest City." By promoting economic development in the area, the project is expected to produce increased sales tax revenues, raise property values, improve economic stability, create new jobs and stimulate new investment in Midwest City. The project is specifically intended to be implemented with the assistance of the Midwest City Memorial Hospital Authority, as authorized pursuant to this Project Plan, and the Midwest City Urban Renewal Authority, as authorized pursuant to the approved Midwest City Downtown Urban Renewal Plan. The common objective is to eliminate and prevent the recurrence of conditions of blight by undertaking the assembly, clearance, and redevelopment of a blighted area and creating economic growth in the heart of Midwest City, which has suffered economic stagnation and decline for more than 30 years.

"Town Center Plaza of Midwest City" will be located on an approximately 90-acre site north and east of the corner of Southeast 29th Street and Air Depot Boulevard. It will be financed by a combination of public and private sources, including apportionment of ad valorem tax increments from Midwest City Increment District No. 1, established in connection with the project.

The project envisions a major commercial redevelopment which will include large and smaller retail uses, with restaurant or smaller retail out-parcels along the frontage of Southeast 29th Street and Air Depot Boulevard. Mixed uses — with potential office, hotel and residential uses — and parks, plazas and green spaces, in a "main street" or "town square" atmosphere, designed on a pedestrian scale, will unify the project with appropriate vehicular and pedestrian improvements.

New private investment is estimated to be approximately $50,000,000. Increased employment is estimated to range from more than 500 full-time equivalent jobs in the near term to more than 1000 jobs over the seven-year period of implementation of the proposed development. Annual sales tax revenue is estimated to be approximately $1,000,000 in the near term, increasing to more than $2,000,000 over a ten-year period.

Direct payroll is estimated to range from $7,500,000 annually in the near term to more than $15,000,000 upon completion of the contemplated redevelopment.

1

## II.   PROJECT AREA AND INCREMENT DISTRICT BOUNDARIES

A.   The project area (within which project activities, including construction of supporting public facilities will take place) is shown on Exhibit "A," Map of Midwest City Downtown Redevelopment Project Boundaries and Increment District." The project boundaries are described in Exhibit "B."

B.   The increment district, within which the tax increment will be generated, will be a smaller area within the project area, as also shown on Exhibit "A." The increment district boundary description is also contained in Exhibit "B."

## III.   ELIGIBILITY OF PROJECT

The project area (including the increment district) is unproductive, underdeveloped and blighted in accordance with Article 10, § 6C of the Oklahoma constitution and the Local Development Act, 62 O.S. § 850, *et seq*. The project area (including the increment district) is a reinvestment area as defined by the Local Development Act, Section 853(16), Title 62 of the Oklahoma Statutes and a blighted area as defined by the Urban Renewal Law, Section 38-101(8), Title 11 of the Oklahoma Statutes.

This is an area where investment, development and economic growth have not occurred, and which requires public improvements to reverse economic stagnation and decline, to serve as a catalyst for expanding employment opportunities, to attract major investment in the area and to preserve or enhance the tax base. As of January 1, 1999, fifty percent (50%) or more of the structures in the area had an age of 35 or more years.

The project area is and was blighted and detrimental to the public health, safety, morals or welfare as a result of a combination of the following factors, which impair or arrest the sound growth of the City of Midwest City and constitute an economic and social liability, arrested economic development, dilapidation, deterioration, age and obsolescence, depreciation of physical maintenance, illegal use of individual structures, presence of structures below minimum code standards, abandonment, excessive vacancies, non-functioning or inappropriately developed structures, inadequate utilities, deleterious land use or layout, faulty lot layout in relation to size, adequacy of accessibility or usefulness, improper subdivision or obsolete platting of land, improper street layout in terms of existing or projected needs, and lack of parking needed for existing or proposed land uses in the area, predominance of defective street layouts and lack of community planning.

## IV.   OBJECTIVES

The purpose of the project and Increment District No. 1, City of Midwest City, is to support the achievement of the economic development objectives of the City of Midwest City and the objectives of the Midwest City Downtown Urban Renewal Plan in order to:

2

A.    Redevelop and revitalize the original downtown area of Midwest City which has become underdeveloped or blighted;

B.    Promote economic development to increase sales tax revenues, raise property values, and improve economic stability;

C.    Promote economic development to retain jobs and create new jobs, and stimulate new investment in Midwest City;

D.    Preserve and enhance the tax base; and

E.    Make possible investment, development and economic growth which would otherwise be difficult without the project and the apportionment of ad valorem taxes from within the increment district.

## V.    FINANCIAL IMPACTS

The proposed private redevelopment will generate tax increments necessary to pay authorized public costs of the project.    Without the proposed redevelopment, significant redevelopment within the area would not occur and any significant increases in ad valorem taxes are extremely improbable.

Undertaking the redevelopment authorized by this Project Plan will first restore the affected taxing jurisdictions to an ad valorem tax level at least equal to that of 1999.    Tax revenues have declined from 1999 to the present.    Thus, the proposed project will have a modest positive financial impact on the affected taxing entities.

The proposed redevelopment project does not create a measurable increase in demand for services or costs to the affected taxing entities other than the City of Midwest City, whose public sector costs will be substantially defrayed from apportioned tax increments as provided in this Project Plan.

The general and intangible impacts on the affected taxing jurisdictions from implementation of this Project Plan are positive and include the achievement of the objectives set forth in Section IV of this Project Plan.

## VI.    STATEMENT OF PRINCIPAL ACTIONS

Implementation actions for the project, including all necessary, appropriate and supportive steps, will consist of the following:

A.    Acquisition of the property necessary for the redevelopment project, as authorized by the Urban Renewal Law, Section 38-101, *et seq.*, Title 11 of the Oklahoma Statutes;

3

B.  Negotiation, preparation, execution, and implementation of development and redevelopment agreements, including agreements for financing and construction by the private developer, as authorized by the Local Development Act, Section 850, *et seq.*, Title 62 of the Oklahoma Statutes;

C.  Site preparation, planning and construction of public improvements necessary to support the redevelopment project;

D.  All other actions necessary and appropriate to carry out the redevelopment project as authorized by the Local Development Act, Section 850, *et seq.*, Title 62 of the Oklahoma Statutes and the Urban Renewal Law, Section 38-101, *et seq.*, Title 11 of the Oklahoma Statutes.

## VII.  ESTABLISHMENT OF INCREMENT DISTRICT NO. 1, CITY OF MIDWEST CITY

A.  The increment of ad valorem taxes from Increment District No. 1, City of Midwest City, in excess of the base assessed value of the increment district, may be apportioned from time to time to pay project costs authorized pursuant to Section X of the Project Plan for a period not to exceed 20 years or the period required for the payment of the authorized project costs, whichever is less.

B.  During the period of apportionment, the apportionment fund shall constitute funds of the Midwest City Memorial Hospital Authority and shall not constitute a part of the general fund to be appropriated annually by the governing body of the City of Midwest City.

C.  The Midwest City Memorial Hospital Authority is authorized to: (1) issue tax apportionment bonds or notes, or both; (2) incur project costs, pursuant to Section X of this Project Plan, and provide funds to or reimburse the City of Midwest City or the Midwest City Urban Renewal Authority for the acquisition of redevelopment project property and payment of project costs; and (3) incur the cost of issuance of such bonds and to accumulate appropriate reserves, if any, in connection with them.

## VIII.  PROJECT AND INCREMENT DISTRICT AUTHORIZATIONS

A.  The City of Midwest City has approved and adopted the Midwest City Downtown Urban Renewal Plan, declared that the acquisition of real property described in the Urban Renewal Plan is necessary to the execution of the Urban Renewal Plan, and designated the Midwest City Urban Renewal Authority as the agency to execute the Urban Renewal Plan, with such Urban Renewal Authority having the right to acquire by condemnation or otherwise, any interest or right or

4

combination of rights in real property, including a fee simple title thereto, necessary to the execution of the approved Urban Renewal Plan, in accordance with the Urban Renewal Law, Section 38-111, Title 11 of the Oklahoma Statutes.

B.  The Midwest City Memorial Hospital Authority is the public entity designated by the City of Midwest City to carry out and administer the provisions of this Project Plan and to exercise all powers necessary or appropriate thereto pursuant to Section 854, Title 62 of the Oklahoma Statutes, except for approval of this Project Plan and those powers enumerated in paragraphs 1, 3, 4, 7, 13 and 16 of Section 854, Title 62.

C.  Transfer of redevelopment project property by the City of Midwest City or the Midwest City Urban Renewal Authority to the Midwest City Memorial Hospital Authority is authorized pursuant to the Local Development Act, Section 854, Title 62 of the Oklahoma Statutes and the Urban Renewal Law, Section 38-109, Title 11 of the Oklahoma Statutes.

D.  The person in charge of implementation of this Project Plan in accordance with the provisions, authorizations and respective delegations of responsibilities contained herein is Charles Johnson, City Manager of the City of Midwest City, or his successor in office.  Charles Johnson, or his successor in office, is authorized to empower one or more designees to exercise responsibilities in connection with project implementation.

## IX.   ALLOCATION OF THE APPORTIONED INCREMENT

The Local Development Act permits allocation of the apportioned tax increment as provided in the Project Plan.

The "increment" is the portion of ad valorem taxes generated by Increment District No. 1, City of Midwest City, in excess of the ad valorem taxes generated by the base assessed value of the increment district.  The increment may be apportioned from time to time and, when apportioned, shall be divided into two parts and allocated as follows:

1.  Part A: That portion of the increment generated by values up to the total equalized assessed value of all real property and all personal property in the district for the year 1999, which is deemed to be $1,458,062 ("1999 Value"), shall be allocated to the affected taxing entities in proportion to their respective tax levies excluding sinking fund levies. 62 O.S. §§ 853 (9) and (13)(i), 854(4).

2.  Part B: The balance of the increment generated within the increment district (i.e., the portion generated by values in excess of the 1999 Value) shall be allocated to the payment of project costs as authorized in Section X of this Project Plan.

5

X.   **BUDGET OF ESTIMATED PROJECT COSTS TO BE FINANCED** FROM **INCREMENT DISTRICT NO. 1**

Project costs to be financed by the apportionment of tax increments from the district are:

A.   The planning, site clearance and construction of public improvements pursuant to development agreements with a private redeveloper, providing for the development of the approximately 90-acre project area; and

B.   The costs incurred or to be incurred by the Midwest City Memorial Hospital Authority in implementing and administering this Project Plan, including, but not limited to, payment and/or reimbursement of costs advanced in connection with the preparation and approval of the project and this Project Plan, administrative costs, organizational costs, professional service costs, acquisition costs, and financing costs and fees.

### Estimated Project Costs

#### Category A Costs

| | |
|---|---|
| Demolition | $ 1,500,000.00 |
| Street Improvements | $ 2,200,000.00 |
| Park Improvements | $    550,000.00 |
| Utility Improvements Including Storm Sewer | $ 1,900,000.00 |

#### Category B Costs

| | |
|---|---|
| Organizational, Administrative and Professional Services | $    300,000.00 |
| Contingencies | $    550,000.00 |
| **Total** | **$7,000,000.00** |

Plus financing costs and interest on repayment of project costs

It is estimated that the time frame for incurring these obligations will be five (5) to seven (7) years from the date of approval of this Project Plan and that such costs may be incrementally incurred during such period by the payment of some project costs directly from apportioned increments.

6

## XI.    FINANCING REVENUE SOURCES

The revenue source expected to finance project costs authorized by Section X is the portion of this increment generated by values in excess of the 1999 Values within the increment district, as defined in Section IX (2).  It is estimated that between $400,000 annually in the near term and $900,000 annually over the longer term will be generated by the incremental increase in ad valorem tax revenue.

Acquisition and related costs will be paid by the Midwest City Memorial Hospital Authority. Other supporting public improvements will be provided by the City of Midwest City. The financing of the projected private redevelopment in the area will be provided by private equity and private mortgage financing, secured by the private redevelopments.

## XII.   PUBLIC REVENUE ESTIMATED TO ACCRUE FROM THE PROJECT

The estimated incremental increases in ad valorem tax revenue, which will serve as the revenue source for financing the project costs authorized by Section X of this Project Plan, is the public revenue directly attributable to the project defined by establishment of the tax increment district.

The public revenue anticipated to result from the development of the project and the attendant increases in employment includes increased sales taxes for the city, increased sales taxes for the county, increases sales taxes for the state, increased ad valorem taxes outside of the increment district, and increased income tax revenues to the State of Oklahoma.

## XIII.  PRIVATE AND PUBLIC INVESTMENTS EXPECTED FOR THE PROJECT

It is estimated that the total public and private investment for the project will exceed $55,000,000, of which approximately ninety per cent (90%) is estimated to be privately financed and approximately ten per cent (10%) is estimated to be publicly financed.  A statement of projected developments in the project area and increment district is contained on the Midwest City Downtown Increment District Proposed Project List, attached as Exhibit "C."  Proposed improvements and uses of property in the increment district are shown generally on the Midwest City Downtown Illustrative Site Development plan attached Exhibit "D."

## XIV.   MISCELLANEOUS PROVISIONS

Uses of real property in the proposed increment district are shown on the attached Exhibit "E."  Structural conditions of real property in the proposed increment district are shown on the attached Exhibit "F."  Some modifications in the master plan of the City of Midwest City may be appropriate to accommodate this project.  Proposed changes in zoning are shown on the attached Exhibit "G" and proposed changes in the master plan are shown on the attached Exhibit "H."

# References

1970, *Planning Document for Midwest City, Oklahoma*

1985, *Comprehensive Plan for Midwest City, Oklahoma*, RGDC/Larkin/Lehr

December 10, 1997 - *An Analysis of the Economic Trends in Eastern Oklahoma County 1970-1997* - Professors Steve Smith, Rose State College; Don Maxwell and Mike Metzger, University of Central Oklahoma

January 2000 - *Midwest City Millennium: Launching Our Legacy, Implementation Plan.*

April 27, 2001 - *Midwest City Downtown Redevelopment Plan,* Frankfurt Short Bruza in Association with Trammell Crow Company & Bledsoe Norick McAuliffe

8

PROJECT AREA

EXHIBIT "A"

Map of Midwest City Downtown Redevelopment
Project Area and Increment District

SCALE

TINKER AIR FORCE BASE

August 13, 2002

## EXHIBIT "B"

## PROJECT BOUNDARIES DESCRIPTION

### Project Area & Increment District Boundaries

## PROJECT AREA

The boundaries of the proposed project area are:

The POINT OF BEGINNING being at the southeast corner of Section 10, Township 11 North, Range 2 West of the Indian Meridian, City of Midwest City, Oklahoma County, Oklahoma (approximately the intersection of South Midwest Boulevard and S.E. 29th Street);

Thence south to the southerly right of way line of Interstate Highway 40;

Thence westerly along the southerly right of way line of Interstate 40 to a point on the west right-of-way line of Air Depot Boulevard;

Thence northerly along the west right of way line of Air Depot Boulevard to its intersection with the northerly right-of-way line of West Fairchild Drive;

Thence due east to a point on the east line of said Section 10 (approximately the centerline of South Midwest Boulevard;

Thence south along that east line of said Section 10 to the POINT OF BEGINNING.

## INCREMENT DISTRICT

The boundaries of the proposed increment district are:

A tract of land lying in the South Half of Section 10, Township 11 North, Range 2 West of the Indian Meridian, City of Midwest City, Oklahoma County, Oklahoma, and being comprised of an unplatted part of said South Half; part of Block 6, all of Block 7, part of Blocks 8 and 9, all of Blocks 10, 11, 12, 19, 20, 21, 22, 23, 24, and 25, part of Block 26, all of Block 27, part of Block 28, and all of Blocks A and B, A REPLAT OF ATKINSON HEIGHTS, an addition to the City of Midwest City as shown on plat thereof recorded in Book 24 of Plats, Page 27; with portions of said plat being re-platted as ATKINSON

B-1

August 13, 2007

HEIGHTS SECOND ADDITION (being a re-plat of the re-plat of ATKINSON HEIGHTS) as shown on the plat thereof recorded in Book 24 of Plats, Page 23, with the herein described tract containing all of Block 1, part of Blocks 2 and 3, and all of Blocks 4, 5, 6, 7 and 8 of said plat; and FLEETWOOD ADDITION, according to the plat thereof recorded in Book 24 of Plats, Page 18, with the herein described tract containing all of Blocks 1 and 2 of said plat; and portions of street rights-of-way created by the aforementioned plats, said tract of land being described by metes and bounds as follows:

COMMENCING at the southwest corner of said Section 10;

THENCE North 00°08'37" East, along the west line of said Section 10, a distance of 330.00 feet to the POINT OF BEGINNING;

THENCE North 00°08'37" East, continuing along the west line of said Section 10, a distance of 495.00 feet;

THENCE South 89°30'37" East, along the south line of West Curtiss Drive as shown on the plat of A REPLAT OF ATKINSON HEIGHTS, and said line extended, a distance of 400.00 feet to a point on the east right-of-way line of Brett Drive, said point being 2.51 feet South 00°08'37" West of the northwest corner of Lot 13, Block 7, A REPLAT OF ATKINSON HEIGHTS;

THENCE Northerly and Easterly with the lines of streets and lots as shown on the plat of A REPLAT OF ATKINSON HEIGHTS, the following seventeen (17) courses:

1. North 00°08'37" East, along the east line of Brett Drive, a distance of 187.51 feet to the southwest corner of Lot 13, Block 6;

2. South 90°00'00" East, along the south line of said Lot 13, a distance of 147.47 feet to the common corner between Lots 13, 11 and 10, Block 6;

3. North 81°22'00" East, along the southerly line of Lots 10 - 3, inclusive, Block 6, a distance of 526.00 feet to the most southerly corner of Lot 2, Block 6;

4. North 00°19'00" East, along an easterly line of said Lot 2, a distance of 48.00 feet to the most southerly corner of Lot 31, Block 6;

5. North 50°58'00" East, along the southeasterly line of said Lot 31, a distance of 129.17 feet to a point on the southerly right-of-way line of West Rickenbacker Drive;

6. Easterly, along the southerly right-of-way line of West Rickenbacker Drive, on a non-tangent curve to the left having a radius of 600.00 feet (said curve subtended

B-2

by a chord which bears South 68°58'05" East a chord distance of 340.20 feet) an arc distance of 344.93 feet to a point, said point being the intersection of the southerly right-of-way line of West Rickenbacker Drive and the southwesterly right-of-way line of West Mid-America Boulevard;

7.     Southeasterly, Easterly and Northeasterly, along the right-of-way line of West Mid-America Boulevard, crossing Mid-America Boulevard, and along the right-of-way line of East Mid-America Boulevard, on a curve to the left having a radius of 175.00 feet (said curve subtended by a chord which bears North 90°00'00" East a chord distance of 345.46 feet) an arc distance of 493.34 feet to the intersection of the easterly right-of-way line of East Mid-America Boulevard with the southerly right-of-way line of East Rickenbacker Drive;

8.     Easterly, along the southerly right-of-way line of East Rickenbacker Drive, on a non-tangent curve to the left having a radius of 600.00 feet (said curve subtended by a chord which bears North 68°58'01" East a chord distance of 340.22 feet) an arc distance of 344.95 feet to a point, said point being the most westerly corner of Lot 23, Block 26;

9.     South 50°58'00" East, along the southwesterly line of said Lot 23, a distance of 129.20 feet (129.17 feet per plat) to a point on the westerly line of Lot 21, Block 26;

10.    South 00°19'00" East, along said westerly line of said Lot 21, a distance of 48.00 feet to the most southerly corner of said Lot 21;

11.    South 81°22'00" East, along the southerly line of Lots 20 - 13, inclusive, Block 26, a distance of 526.00 feet to the southeast corner of Lot 13, Block 26;

12.    South 90°00'00" East, along the south line of Lots 12 - 3, inclusive, Block 26, a distance of 519.50 feet to the southeast corner of Lot 3, Block 26;

13.    North 00°00'00" East, along the east line of said Lot 3, a distance of 135.00 feet to the northeast corner of said Lot 3, said point also being on the south right-of-way line of East Douglas Drive;

14.    South 90°00'00" East, along the south right-of-way line of Douglas Drive, said line also being the north line of Block 26, crossing Miller Drive, and the north line of Block 27, a distance of 400.00 feet to the northeast corner of said Block 27, said point also being the intersection of the south right-of-way line of East Douglas Drive and the west right-of-way line of Marshall Drive;

August 13, 2002

15.    THENCE South 00°00'00" West, along the east line of said Block 27, a distance of 125.00 feet;

16.    THENCE South 90°00'00" East, along the south line of Lot 2, Block 28, and said line extended across Marshall Drive, a distance of 150.00 feet to the southeast corner of said Lot 2, Block 28;

17.    THENCE South 00°00'00" West, along the east line of said Block 28 (said line, in part, being along the east line of Block 2, FLEETWOOD ADDITION), and said line extended, a distance of 1051.95 feet to a point on the south line of said South Half of Section 10;

THENCE North 89°30'37" West, along the south line of said Section 10, a distance of 3092.35 feet;

THENCE North 00°08' 40" East a distance of 327.30 feet;

THENCE North 89°29'57" West a distance of 349.15 feet;

THENCE South 00°08'37" West, parallel with the west line of said South Half of Section 10, a distance of 327.37 feet to a point on the south line of the South Half of said Section 10;

THENCE North 89°30'37" West, along the south line of said Section 10, a distance of 270.00 feet;

THENCE North 00°08'37" East, parallel with the west line of the South Half of said Section 10, a distance of 330.00 feet;

THENCE North 89°30'37" West, parallel with the south line of said Section 10, a distance of 220.00 feet to the POINT OF BEGINNING.

Said tract containing 90.7978 acres, more or less.

August 13, 2002

# EXHIBIT "C"

## Proposed Development in the Project Area and Increment District

| | |
|---|---|
| Retail Development | $50,000,000 |
| Office, hotel and other | $10,000,000 |
| Public Improvements | $ 6,000,000 |



EXHIBIT "D"
Midwest City Downtown
Illustrative Site Development Plan



INCREMENT DISTRICT

EXHIBIT "E"
LAND USE

TINKER AIR FORCE BASE



INCREMENT DISTRICT

EXHIBIT "F"
STRUCTURAL CONDITIONS

MAINTENANCE NEEDED
MINOR MAINTENANCE NEEDED
VACANT

TINKER AIR FORCE BASE

August 13, 2002

## EXHIBIT "G"

## PROPOSED CHANGES IN ZONING

The portions of the increment district to be redeveloped by agreement with a private redeveloper will be rezoned as a planned unit development ("PUD") for commercial uses consistent with the Project Plan.

August 23, 2002

## EXHIBIT "H"

## PROPOSED CHANGES IN MASTER PLAN

Minor modifications of the Master Plan of the City of Midwest City are proposed to provide for level four use intensity with respect to property acquired for redevelopment pursuant to this Project Plan.

H-1

September 16, 2004



# MIDWEST CITY DOWNTOWN URBAN RENEWAL PLAN

## PREPARED BY:

### THE CITY OF MIDWEST CITY

OFFICE OF THE MAYOR AND CITY COUNCIL
CHARLES JOHNSON, CITY MANAGER
J. GUY HENSON, DIRECTOR OF DEVELOPMENT SERVICES
RUSSELL SMITH, REDEVELOPMENT COORDINATOR
BILLY HARLESS, COMPREHENSIVE PLANNER
KATHERINE BOLLES, CITY ATTORNEY

### Under the Direction of:

**OFFICE OF THE MAYOR AND CITY COUNCIL**

EDDIE O. REED, MAYOR
COUNCILMAN JERRY R. MAYNARD
COUNCILMAN TURNER MANN
COUNCILWOMAN RUTH CAIN
COUNCILMAN CHARLES C. JOYNER
COUNCILMAN MICHAEL A. PUNG
COUNCILMAN RICHARD R. RICE

**BOARD OF COMMISSIONERS**
**MIDWEST CITY URBAN RENEWAL AUTHORITY**

COMMISSIONER DAVE HERBERT, CHAIRMAN
COMMISSIONER JOE B. BARNES, VICE CHAIRMAN
COMMISSIONER TOMMY MELTON, SECRETARY
COMMISSIONER HANK HENDERSON
COMMISSIONER MARION C. REED
CHARLES JOHNSON, EXECUTIVE DIRECTOR

WITH THE
ASSISTANCE OF:

THE CENTER FOR ECONOMIC DEVELOPMENT LAW
301 NORTH HARVEY, SUITE 200
OKLAHOMA CITY, OKLAHOMA 73102
(405) 232-4606
ecomlaw@ecomlaw.biz

EXHIBIT 3

# MIDWEST CITY DOWNTOWN URBAN RENEWAL PLAN

## I.    DESCRIPTION OF PROJECT

This urban renewal project shall consist of the redevelopment and revitalization of the original downtown area of Midwest City and the generation and creation of "Town Center Plaza at Midwest City." The principal activities will be clearance and redevelopment in order to remove a blighted area in the heart of the City that has suffered economic stagnation and decline over the past 25 years or more. By promoting economic development in the area, the project is expected to produce increased sales tax revenues, rising property values, improved economic stability, creation of new jobs and stimulation of new investment in Midwest City.

"Town Center Plaza of Midwest City" will be located on an approximately 90-acre site north and east of the corner of Southeast 29th Street and Air Depot Boulevard. It will be financed by a combination of public and private sources, including apportionment of ad valorem tax increments from Midwest City Increment District No. 1, established in connection with the project.

The project envisions a major commercial redevelopment that will include large and smaller retail uses, with restaurant or smaller retail outparcels along the frontage of SE 29th Street and Air Depot. Mixed uses - with potential office, hotel and residential uses - and parks, plazas and green spaces, in a "main street" or "town square" atmosphere, designed on a pedestrian scale, will unify the project with appropriate vehicular and pedestrian improvements.

New private investment is estimated to be approximately $50,000,000. Increased employment is estimated to range from more than 500 full-time equivalent jobs in the near term to more than 1000 jobs over the seven-year period of implementation of the project. Annual sales tax revenue is estimated to be approximately $1,000,000 in the near term, increasing to more than $2,000,000 over a 10-year period.

Direct payroll is estimated to range from $7,500,000 annually in the near term to more than $15,000,000 upon completion of the project.

## II.    PROJECT AREA BOUNDARIES

The project area is shown on Exhibit A, Map of Midwest City Downtown Urban Renewal Plan Project Boundaries. The project boundaries are described in Exhibit B.

## III.    ELIGIBILITY OF PROJECT AREA

The eligibility of the project for redevelopment within the meaning of Oklahoma's Urban Renewal Act, 11 O.S. 2001, § 38-101, *et seq.*, has been documented in various plans and studies of the City of Midwest City over the last 20 years. See Section X. REFERENCES. The City Council of the City of Midwest City has previously determined the project area to be blighted within the meaning of 11

O.S. § 31-101(8) by its findings contained in Resolution No. 2002-11 approved on May 28, 2002. The City Council reconfirmed its findings by Ordinance No. 2852 approving the Midwest City Downtown Redevelopment Project Plan adopted pursuant to the Local Development Act, 62 O.S. 2001, § 850, *et seq.*, approved on August 27, 2002.

The project area is an area where investment, development and economic growth have not occurred, and which requires public project actions to reverse economic stagnation and decline, to serve as a catalyst for expanding employment opportunities, to attract major investment in the area and to enhance the tax base. As of January 1, 1999, fifty percent (50%) or more of the structures in the project area had an age of thirty-five (35) years or more.

The project area is and was blighted as defined by the Urban Renewal Act, 11 O.S. 2001, § 38-101. Conditions within the area are detrimental to the public health, safety, morals or welfare of citizens as a result of a combination of the following factors which impair or arrest the sound growth of the City of Midwest City and constitute an economic and social liability: arrested economic development, dilapidation, deterioration, age and obsolescence, depreciation of physical maintenance, illegal use of individual structures, presence of structures below minimum code standards, abandonment, excessive vacancies, non-functioning or inappropriately developed structures, inadequate utilities, deleterious land use or layout, faulty lot layout in relation to size, adequacy, accessibility or usefulness, improper subdivision or obsolete platting of land, improper street layout in terms of existing or projected needs, lack of parking needed for existing or proposed land uses in the area, predominance of defective street layouts and a lack of community planning.

## IV.   OBJECTIVES

The purpose of the project is to assist in the implementation of the Midwest City Downtown Redevelopment Project and to support the achievement of the economic development objectives of the City of Midwest City in order to:

A.   Redevelop and revitalize the original downtown area of Midwest City which has become underdeveloped and blighted;

B.   Promote economic development to increase sales tax revenues, raise property values and improve economic stability;

C.   Promote economic development to retain jobs and create new jobs, and stimulate new investment in Midwest City;

D.   Preserve and enhance the tax base; and

E.   Make possible investment, development and economic growth which would otherwise not occur without the project.

## V.   STATEMENT OF PRINCIPAL ACTIONS

2

Implementation actions for the project, including all necessary, appropriate and supportive steps, will consist of the following:

A.  Acquisition of the property necessary for the redevelopment project, excluding properties previously acquired by the Midwest City Memorial Hospital Authority.

B.  Disposition of the property acquired by the Midwest City Urban Renewal Authority to the Midwest City Memorial Hospital Authority for implementation of development and redevelopment agreements, including agreements for financing and construction by a private developer, as authorized by the Local Development Act, Section 850, *et seq.*, Title 62 of the Oklahoma Statutes.

C.  All other actions necessary and appropriate to carry out the redevelopment project as authorized by the Urban Renewal Act, 11 O.S. 2001, § 38-101, *et seq.*, as amended.

## VI.  PROJECT AUTHORIZATIONS

A.  **Acquisition**. Acquisition of the redevelopment project property within the project area by the Midwest City Urban Renewal Authority is authorized, including acquisition by exercise of eminent domain, to carry out the purposes of the urban renewal plan in accordance with 11 O.S., § 38-111, excluding properties previously acquired by the Midwest City Memorial Hospital Authority.

B.  **Financing**. The Midwest City Memorial Hospital Authority is authorized and directed to provide financing for the urban renewal plan in order to achieve the objectives of the urban renewal plan and the Midwest City Downtown Redevelopment Project Plan.

C.  **Disposition**. Transfer of project redevelopment property by the Midwest City Urban Renewal Authority to the Midwest City Memorial Hospital Authority is authorized pursuant to the Urban Renewal Act, 11 O.S. 2001, § 38-101, *et seq.*

## VII.  FINANCING PLAN

The proposed private redevelopment will generate tax increments necessary to pay authorized public costs of the project. Without the proposed redevelopment, significant redevelopment within the area would not occur and any significant increases in ad valorem taxes are extremely improbable. Projected development investment is summarized on Exhibit C and an Illustrative Site Development Plan is shown on Exhibit D.

The City of Midwest City has previously approved the Midwest City Downtown Redevelopment Project Plan and established Midwest City Increment District No. 1, which provides for funding certain project costs by the Midwest City Memorial Hospital Authority, which shall

3

provide funding to the Midwest City Urban Renewal Authority sufficient to defray its actual and reasonable costs of acquisition, disposition, and administration, including costs incidental thereto.

Acquisition and related costs will be paid by the Midwest City Memorial Hospital Authority. Other supporting public improvements will be provided by the City of Midwest City. The financing of the projected private redevelopment in the area will be provided by private equity and private mortgage financing, secured by the private redevelopments.

## VIII.  RELOCATION PLAN

The Midwest City Urban Renewal Authority shall carry out all relocation activities in accordance with 11 O. S. 2001, § 38-108 (8), this urban renewal plan and the Relocation Policy and Procedures for the Midwest City Urban Renewal Authority, as adopted and amended from time to time, in order to provide a feasible method for the relocation of families and businesses displaced by its actions into decent, safe and sanitary accommodations within their means and without undue hardship to such families and businesses.  Such Relocation Policy and Procedures shall utilize a framework of the policies, procedures, regulations and forms used by the United States Department of Housing and Urban Development, unless otherwise noted in the Relocation Policy and Procedures. The Relocation Policy and Procedures shall be clear, uniform, and non-discriminatory within eligible classes and groups. The City Council of Midwest City may direct further benefits and financial assistance in a manner that is clear, uniform and nondiscriminatory in addition to relocation assistance offered through the Relocation Policy and Procedures of the Midwest City Urban Renewal Authority.

Households and individuals will be relocated upon discovery of at least one comparable, replacement dwelling and the offer of its availability to each subject household or individual. Businesses will be relocated or compensated in a uniform manner as set out in the Relocation Policy and Procedures. Assistance payments for moving and other expenses will be made upon receipt of completed claims. Accommodations of prorated payment will be made to households that change membership when relocation occurs in accordance with the Relocation Policy and Procedures. Eviction shall be a measure of last resort and shall be performed in accordance with state or, if applicable, federal law and in accordance with the Relocation Policy and Procedures.

The Midwest City Urban Renewal Authority will provide reasonable notice to relocatees of all relocation actions as set out in the Relocation Policy and Procedures.  Likewise, appeals procedures shall be provided to all those to be relocated or displaced.  Tenants, homeowners and businesses will be provided with counseling and advisory assistance with an emphasis on finding opportunities for permanent improvements in their social, economic and environmental situations and for improvements to quality of life for all those affected by relocation or displacement. Households or businesses adjacent to the project area that are not relocated or displaced will receive the benefits of counseling or advisory assistance if deemed desirable.

The Midwest City Urban Renewal Authority shall perform ongoing monitoring of all relocation or displacement activities, including adequate records keeping, site occupants" needs and concerns, counseling and advisory services, dwelling or relocation sites' discovery procedures and

inspection procedures for sites, claims processing, appeals processing and other such activities. An internal audit shall be conducted after the majority of relocations or displacements have been completed; and, at the end of the project.

## IX.   MISCELLANEOUS PROVISIONS

This urban renewal plan is integrally related to and assists in carrying out the Midwest City Downtown Redevelopment Project Plan, which was adopted on August 27, 2002, pursuant to the Local Development Act, 62 O.S. 2001, § 850, *et seq.*

This urban renewal plan complies with and aids in a outlining the long-term objectives of the Midwest City Comprehensive (general) Plan, as amended.

Any rezoning necessary for the project has previously been authorized.

## X.   REFERENCES

1985, *Comprehensive Plan for Midwest City, Oklahoma*, RGDC/Larkin/Lehr

December 10, 1997 - *An Analysis of the Economic Trends in Eastern Oklahoma County 1970-1997* - Professors Steve Smith, Rose State College; Don Maxwell and Mike Metzger, University of Central Oklahoma

January 2000 - *Midwest City Millennium: Launching Our Legacy, Implementation Plan.*

April 27, 2001 - *Midwest City Downtown Redevelopment Plan*, Frankfurt, Short Bruza in Association with Trammell Crow Company & Bledsoe Norick McAuliffe

August 27, 2002 - Midwest City Downtown Redevelopment Project Plan adopted by Ordinance No. 2852.

# EXHIBIT A

## Map of Midwest City Downtown Urban Renewal Plan Project Boundaries

Exhibit A



EXHIBIT "A"

Map of Midwest City Downtown Urban Renewal
Plan Project Boundaries

**EXHIBIT B**

## MIDWEST CITY DOWNTOWN URBAN RENEWAL PLAN
### PROJECT BOUNDARIES DESCRIPTION

The boundaries of the urban renewal project area are described as follows:

A tract of land lying in the South Half of Section 10, Township 11 North, Range 2 West of the Indian Meridian, City of Midwest City, Oklahoma County, Oklahoma, and being comprised of an unplatted part of said South Half; part of Block 6, all of Block 7, part of Blocks 8 and 9, all of Blocks 10, 11, 12, 19, 20, 21, 22, 23, 24, and 25, part of Block 26, all of Block 27, part of Block 28, and all of Blocks A and B, A REPLAT OF ATKINSON HEIGHTS, an addition to the City of Midwest City as shown on plat thereof recorded in Book 24 of Plats, Page 27; with portions of said plat being re-platted as ATKINSON HEIGHTS SECOND ADDITION (being a re-plat of the re-plat of ATKINSON HEIGHTS) as shown on the plat thereof recorded in Book 24 of Plats, Page 23, with the herein described tract containing all of Block 1, part of Blocks 2 and 3, and all of Blocks 4, 5, 6, 7 and 8 of said plat; and FLEETWOOD ADDITION, according to the plat thereof recorded in Book 24 of Plats, Page 18, with the herein described tract containing all of Blocks 1 and 2 of said plat; and portions of street rights-of-way created by the aforementioned plats, said tract of land being described by metes and bounds as follows:

COMMENCING at the southwest corner of said Section 10;

THENCE North 00°08'37" East, along the west line of said Section 10, a distance of 330.00 feet to the POINT OF BEGINNING;

THENCE North 00°08'37"East, continuing along the west line of said Section 10, a distance of 495.00 feet;

THENCE South 89°30'37"East, along the south line of West Curtiss Drive as shown on the plat of A REPLAT OF ATKINSON HEIGHTS, and said line extended, a distance of 490.00 feet to a point on the east right-of-way line of Brett Drive, said point being 2.51 feet South 00°08'37"West of the northwest corner of Lot 13, Block 7, A REPLAT OF ATKINSON HEIGHTS;

THENCE Northerly and Easterly with the lines of streets and lots as shown on the plat of A REPLAT OF ATKINSON HEIGHTS, the following seventeen (17) courses:

1.   North 0°08'37" East, along the east line of Brett Drive, a distance of 187.51 feet to the southwest corner of Lot 13, Block 6;

2.   South 90°00'00° East, along the south line of said Lot 13, a distance of 147.47 feet to the common corner between Lots 13, 11 and 10, Block 6;

3.   North 81°22'00"East, along the southerly line of Lots 10 - 3, inclusive, Block 6, a distance of 526.00 feet to the most southerly corner of Lot 2, Block 6;

Exhibit B

4.   North 00°19'00"East, along an easterly line of said Lot 2, a distance of 48.00 feet to the most southerly corner of Lot 31, Block 6;

5.   North 50°58'00"East, along the southeasterly line of said Lot 31, a distance of 129.17 feet to a point on the southerly right-of-way line of West Rickenbacker Drive;

6.   Easterly, along the southerly right-of-way line of West Rickenbacker Drive, on a non-tangent curve to the left having a radius of 600.00 feet (said curve subtended by a chord which bears South 68°58'05"East a chord distance of 340.20 feet) an arc distance of 344.93 feet to a point, said point being the intersection of the southerly right-of-way line of West Rickenbacker Drive and the southwesterly right-of-way line of West Mid-America Boulevard;

7.   Southeasterly, Easterly and Northeasterly, along the right-of-way line of West Mid-America Boulevard, crossing Mid-America Boulevard, and along the right-of-way line of East Mid-America Boulevard, on a curve to the left having a radius of 175.00 feet (said curve subtended by a chord which bears North 90°00'00"East a chord distance of 345.46 feet) an arc distance of 493.34 feet to the intersection of the easterly right-of-way line of East Mid-America Boulevard with the southerly right-of-way line of East Rickenbacker Drive;

8.   Easterly, along the southerly right-of-way line of East Rickenbacker Drive, on a non-tangent curve to the left having a radius of 600.00 feet (said curve subtended by a chord which bears North 68°58'01"East a chord distance of 340.22 feet) an arc distance of 344.95 feet to a point, said point being the most westerly corner of Lot 23, Block 26;

9.   South 50°58'00"East, along the southwesterly line of said Lot 23, a distance of 129.20 feet (129.17 feet per plat) to a point on the westerly line of Lot 21, Block 26;

10.   South 00°19'00"East, along said westerly line of said Lot 21, a distance of 48.00 feet to the most southerly corner of said Lot 21;

11,   South 81°22'00"East, along the southerly line of Lots 20 - 13, inclusive, Block 26, a distance of 526.00 feet to the southeast corner of Lot 13, Block 26;

12.   South 90°00'00"East, along the south line of Lots 12 - 3, inclusive, Block 26, a distance of 519.50 feet to the southeast corner of Lot 3, Block 26;

13.   North 00°00'00"East, along the east line of said Lot 3, a distance of 135.00 feet to the northeast corner of said Lot 3, said point also being on the south right-of-way line of East Douglas Drive;

14.   South 90°00'00"East, along the south right-of-way line of Douglas Drive, said line also being the north line of Block 26, crossing Miller Drive, and the north line of

Exhibit B

Block 27, a distance of 400.00 feet to the northeast corner of said Block 27, said point also being the intersection of the south right-of-way line of East Douglas Drive and the west right-of-way line of Marshall Drive;

15.    THENCE South 00°00'00"West, along the east line of said Block 27, a distance of 125.00 feet;

16.    THENCE South 90°00'00"East, along the south line of Lot 2, Block 28, and said line extended across Marshall Drive, a distance of 150.00 feet to the southeast corner of said Lot 2, Block 28;

17.    THENCE South 00°00'00"West, along the east line of said Block 28 (said line, in part, being along the east line of Block 2, FLEETWOOD ADDITION), and said line extended, a distance of 1051.95 feet to a point on the south line of said South Half of Section 10;

THENCE North 89°30'37"West, along the south line of said Section 10, a distance of 3092.35 feet;

THENCE North 00°08' 40"East a distance of 327.30 feet;

THENCE North 89°29'57"West a distance of 349.15 feet;

THENCE South 00°08'37"West, parallel with the west line of said South Half of Section 10, a distance of 327.37 feet to a point on the south line of the South Half of said Section 10;

THENCE North 89°30'37"West, along the south line of said Section 10, a distance of 270.00 feet;

THENCE North 00°08'37"East, parallel with the west line of the South Half of said Section 10, a distance of 330.00 feet;

THENCE North 89°30'37"West, parallel with the south line of said Section 10, a distance of 220.00 feet to the POINT OF BEGINNING.

Said tract containing 90.7978 acres, more or less.

Exhibit B

## EXHIBIT C

### Projected Development in the Urban Renewal Project Area

| | |
|---|---|
| Retail Development | $50,000,000 |
| Office, hotel and other | $10,000,000 |
| Public Improvements | $ 6,000,000 |

Exhibit C

# EXHIBIT D

## Midwest City Downtown Illustrative Site Development Plan

Exhibit D



EXHIBIT "D"
Midwest City Downtown
Illustrative Site Development Plan

RESOLUTION NO. 2004-25

A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF MIDWEST CITY APPROVING AND ADOPTING THE MIDWEST CITY DOWNTOWN URBAN RENEWAL PLAN; DETERMINING THE CONFORMANCE OF THE URBAN RENEWAL PLAN WITH THE COMPREHENSIVE (GENERAL) PLAN, AS AMENDED; DETERMINING THAT FEASIBLE METHODS EXIST FOR THE FINANCING OF THE PROJECT; DETERMINING THAT FEASIBLE METHODS EXIST FOR THE RELOCATION OF THOSE DISPLACED; AND SPECIFICALLY IDENTIFYING PROPERTY FOR ACQUISITION.

WHEREAS, the City of Midwest City has undertaken the redevelopment of its historic downtown area (hereinafter the "Project Area") in accordance with the Local Development Act, 62 O.S. §§ 850, et seq., because the area had become blighted within the meaning of the Oklahoma Urban Renewal Law, 11 O.S. § 38-101(8), had become unproductive, underdeveloped and blighted within the meaning of Article 10, § 6C of the Oklahoma Constitution, and constituted a reinvestment area as defined by the Local Development Act, 60 O.S. § 853(16); and

WHEREAS, the 1970 Planning Document of the City of Midwest City documents deterioration in the Project Area through declining properties, poor traffic circulation, disorderly land use patterns, and the need for major rehabilitation on more than 50% of the structures; and

WHEREAS, two housing surveys, performed in 1992 and 1997, showed a continuing decline in the Project Area from "fair" to "poor," citing obsolete platting, right-of-way and utility layouts, and haphazard land use patterns, leading to near-impossible conditions for development; and

WHEREAS, the April 2001 Midwest City Downtown Redevelopment Plan, prepared by Frankfurt Short Bruza, concluded that the Project Area had reached functional obsolescence and recommended a plan for redevelopment; and

WHEREAS, redevelopment of the Project Area is necessary in the interest of the public health, safety, morals, and welfare of the residents of the City of Midwest City; and

WHEREAS, the City Council found on May 28, 2002 in Resolution No. 2002-11, that the Project Area suffered from blighting conditions identified in the Oklahoma Urban Renewal Law, 11 O.S. § 38-101(8), and that the Project Area "is and was a blighted area because of each and a combination of the following factors: dilapidation, obsolescence, deterioration, presence of structures below minimum code standards, abandonment, excessive vacancies, arrested economic development, deleterious land use or layout, depreciation of physical maintenance and lack of community planning"; and

WHEREAS, pursuant to the Local Development Act, 62 O.S. §§ 850, et seq., the City of Midwest City has approved and is in the process of implementing the Midwest City Downtown Redevelopment Project Plan ("Project Plan") in the Project Area; and

WHEREAS, pursuant to Ordinance No. 2852 dated August 27, 2002, the City Council approved and adopted the Project Plan, which specifically stated, in compliance with the Oklahoma Urban Renewal Law (as referenced in the Local Development Act), that "the [P]roject [A]rea is and was blighted and detrimental to the public health, safety, morals or welfare as a result of a combination of the following factors, which impair or arrest the sound growth of the City of Midwest City and constitute an economic and social liability: arrested economic development, dilapidation, deterioration, age and obsolescence, depreciation of physical maintenance, illegal use of individual structures, presence of structures below minimum code standards, abandonment, excessive vacancies, non-functioning or inappropriately developed structures, inadequate utilities, deleterious land use or layout, faulty lot layout in relation to size, adequacy of accessibility or usefulness, improper subdivision or obsolete platting of land, improper street layout in terms of existing or projected needs, and lack of parking needed for existing or proposed land uses in the area, predominance of defective street layouts and lack of community planning"; and

EXHIBIT 4

**WHEREAS,** on June 29, 2004, the Oklahoma Supreme Court in *City of Midwest City v. House of Realty, Inc.,* 2004 OK 56, decided that the City, in relying on its general municipal powers including those granted in 11 O.S. §§ 22-104 (3) and (8) to condemn property, "did not possess authority pursuant to its general eminent domain powers to condemn the property apart from those statutes regulating the joint conduct of municipalities and public trusts when removing blighted property and creating economic redevelopment;" and the Court specifically determined that the Oklahoma Urban Renewal Law, 11 O.S. §§ 38-101 – 38-123, is one of two such statutes under which the authority to condemn for redevelopment exists; and

**WHEREAS,** the Local Development Act, 62 O.S. §§ 850, *et seq.*, is specifically intended to be used in conjunction with other programs and efforts; and

**WHEREAS,** the exercise of the powers granted by the Oklahoma Urban Renewal Law, 11 O.S. §§ 38-101 – 38-123, is in the public interest; and

**WHEREAS,** in Resolution No. 2004-19 on September 14, 2004, the City Council of the City of Midwest City found and confirmed that the Project Area "is and was blighted and detrimental to the public health, safety, morals or welfare as a result of a combination of following factors which impair or arrest the sound growth of the City of Midwest City and constitute an economic and social liability: arrested economic development, dilapidation, deterioration, age and obsolescence, depreciation of physical maintenance, illegal use of individual structures, presence of structures below minimum code standards, abandonment, excessive vacancies, non-functioning or inappropriately developed structures, inadequate utilities, deleterious land use or layout, faulty lot layout in relation to size, adequacy of accessibility or usefulness, improper subdivision or obsolete platting of land, improper street layout in terms of existing or projected needs, and lack of parking needed for existing or proposed land uses in the area, predominance of defective street layouts and lack of community planning;" and

**WHEREAS,** in Resolution No. 2004-19 on September 14, 2004, the City Council of the City of Midwest City elected that powers for the redevelopment of the Project Area be exercised by the Midwest City Urban Renewal Authority, pursuant to the Oklahoma Urban Renewal Law, 11 O.S. §§ 38-101 – 38-123, and further authorized and approved the Mayor's appointment of the Board of Commissioners of the Midwest City Urban Renewal Authority; and

**WHEREAS,** under the provisions of the Oklahoma Urban Renewal Law, 11 O.S. §§ 38-101 – 38-123, the City of Midwest City is authorized to undertake activities for the purpose of eliminating and preventing the development or spread of blight; and

**WHEREAS,** the September 30, 2004 Midwest City Downtown Redevelopment Area Report on Project Area Conditions, prepared by the City of Midwest City, documents in detail the arrested economic development within the Project Area for over thirty (30) years, meeting eight (8) or more of the "blighted area" conditions under the Oklahoma Urban Renewal Law, 11 O.S. § 38-101(8); and

**WHEREAS,** the City of Midwest City has made studies referenced herein, including the September 30, 2004 Midwest City Downtown Redevelopment Area Report on Project Area Conditions, of the location, physical condition of the structures, land use, environmental influences, and economic conditions of the Project Area and such studies of the facts and conditions demonstrate that the Project Area is and was a blighted area, as defined by the Oklahoma Urban Renewal Law and Article 10, § 6C of the Oklahoma Constitution, and that the Project Area is and was blighted and detrimental to the public health, safety, morals or welfare as a result of a combination of following factors which impair or arrest the sound growth of the City of Midwest City and constitute an economic and social liability: arrested economic development, dilapidation, deterioration, age and obsolescence, depreciation of physical maintenance, presence of structures below minimum code standards, abandonment, non-functioning or inappropriately developed structures, inadequate utilities, deleterious land use or layout, faulty lot layout in relation to size, adequacy of accessibility or usefulness, insanitary or unsafe conditions, deterioration of site or other improvements, improper subdivision or obsolete platting of land, improper street layout in terms of existing or projected needs, and lack of parking needed for existing or proposed land uses in the area, predominance of defective street layouts and lack of

community planning; and the members of the City Council have been apprised and are aware of these facts and conditions; and

**WHEREAS,** the continuation of assembly, clearance, and redevelopment of the Project Area will assist in the activities of the City of Midwest City authorized under the provisions of the Oklahoma Urban Renewal Law, 11 O.S. §§ 38-101 – 38-123, in eliminating and preventing the development or spread of blight; and

**WHEREAS,** it is necessary, appropriate, and desirable to authorize the Midwest City Urban Renewal Authority, pursuant to the Oklahoma Urban Renewal Law, 11 O.S. §38-111(C), to acquire certain parcels or tracts of real property, including unimproved real property, which it may acquire through eminent domain; and

**WHEREAS,** the Oklahoma Urban Renewal Law, 11 O.S. §§ 38-101 – 38-123, provides a procedure for adoption of urban renewal and urban redevelopment plans; and

**WHEREAS,** there has been presented to the City Council of the City of Midwest City, for its consideration and approval, a copy of a proposed redevelopment plan for the Project Area entitled The Midwest City Downtown Urban Renewal Plan ("Urban Renewal Plan"), dated September 16, 2004, which consists of five pages and four exhibits, setting forth the project boundaries, the objectives of the project, and the provisions of the Urban Renewal Plan; and

**WHEREAS,** on September 16, 2004, in accordance with the statutory procedure and at the direction and request of the City Council of the City of Midwest City, the Board of Commissioners of the Midwest City Urban Renewal Authority approved for submission to the City of Midwest City the proposed Urban Renewal Plan, and has presented said Urban Renewal Plan to the City Planning Commission and the City Council of the City of Midwest City for consideration and approval; and

**WHEREAS,** a comprehensive (general) plan, as amended, has been prepared and recognized and used as a guide for the general development of the City of Midwest City as a whole; and

**WHEREAS,** the Midwest City Planning Commission, which is the duly designated and acting official planning body for the City of Midwest City, has submitted to the City Council its Resolution and recommendations respecting the proposed Urban Renewal Plan for the Project Area and has certified that the Urban Renewal Plan conforms to the comprehensive (general) plan, as amended, for the City of Midwest City as a whole, subject to approval of an amendment thereto, which now has been approved by the City Council, and the City Council has duly considered said Resolution, recommendations and certification of the Planning Commission; and

**WHEREAS,** in accordance with the statutory procedure, the Midwest City Planning Commission on October 5, 2004, recommended approval of the Urban Renewal Plan to the City Council of the City of Midwest City; and

**WHEREAS,** notice of the time and place of a public hearing before the City Council of the City of Midwest City on the proposed Urban Renewal Plan was published in a newspaper of general circulation in Midwest City and by posting in the Project Area not less than five (5) public notice signs, as required by law; and

**WHEREAS,** pursuant to said notice, said public hearing was held on this date at the regular meeting of the City Council, and all persons present were given an opportunity to be heard for and against the proposed Urban Renewal Plan; and

**WHEREAS,** individuals, families and businesses that may be displaced as a result of carrying out the Urban Renewal Plan will be provided relocation assistance in accordance with the Relocation Plan contained in the Urban Renewal Plan and the Relocation Policies and Procedures adopted by the Midwest City Urban Renewal Authority; and

**WHEREAS,** the Urban Renewal Plan contains feasible methods for financing the project subject to certain approval actions by the City of Midwest City; and

3

**WHEREAS**, the City Council of the City of Midwest City deems it necessary, appropriate, and desirable to approve and adopt the Urban Renewal Plan;

**NOW, THEREFORE, BE IT RESOLVED** that the City Council of the City of Midwest City finds as follows:

1.      It is hereby found, determined, and confirmed that the Project Area embraced in the Midwest City Downtown Urban Renewal Plan is and was blighted and detrimental to the public health, safety, morals or welfare as a result of a combination of following factors which impair or arrest the sound growth of the City of Midwest City and constitute an economic and social liability: arrested economic development, dilapidation, deterioration, age and obsolescence, depreciation of physical maintenance, presence of structures below minimum code standards, abandonment, non-functioning or inappropriately developed structures, inadequate utilities, deleterious land use or layout, faulty lot layout in relation to size, adequacy of accessibility or usefulness, insanitary or unsafe conditions, deterioration of site or other improvements, improper subdivision or obsolete platting of land, improper street layout in terms of existing or projected needs, and lack of parking needed for existing or proposed land uses in the area, predominance of defective street layouts and lack of community planning.

2.      The Midwest City Downtown Urban Renewal Plan, having been duly reviewed and considered, is hereby adopted and approved, and the City Clerk is hereby directed to file a copy of the Midwest City Downtown Urban Renewal Plan with the minutes of this meeting.

3.      It is hereby found and determined that the Midwest City Downtown Urban Renewal Plan for the Project Area conforms to and assists in the execution of the comprehensive (general) plan of the City of Midwest City, as amended.

4.      It is hereby found and determined that the Midwest City Downtown Urban Renewal Plan includes feasible methods for financing the project by the City of Midwest City.

5.      It is hereby found and determined that, pursuant to the Relocation Plan provisions in the Midwest City Downtown Urban Renewal Plan and the Relocation Policies and Procedures adopted by the Midwest City Urban Renewal Authority, a feasible method exists for the relocation of individuals, families, and businesses that may be displaced from the Project Area pursuant to the Midwest City Downtown Urban Renewal Plan in decent, safe and sanitary accommodations within their means and without undue hardship to such individuals, families, and businesses.

6.      It is hereby found and determined that it is necessary, appropriate, and desirable to authorize the Midwest City Urban Renewal Authority to acquire property by eminent domain as provided in the Midwest City Downtown Urban Renewal Plan, and the City Council of Midwest City hereby specifically identifies, pursuant to the Oklahoma Urban Renewal Law, 11 O.S. § 38-111(C), the parcels or tracts of unimproved real property, which it authorizes the Midwest City Urban Renewal Authority to acquire through eminent domain, if necessary:

Tract One

Part of the Southwest Quarter (SW/4) of Section Ten (10), Township Eleven (11) North, Range Two (2) West of the Indian Meridian, Oklahoma County, Oklahoma, more particularly described as follows: Beginning at a point on West line of said Quarter Section North 00°08'37" East a distance of 330 feet from SW corner of said Quarter Section; thence South 89°30'37" East a distance of 440 feet; thence North 00°08'37" East a distance of 175 feet; thence North 89°30'37" West a distance of 440 feet to a point on West line of said Quarter Section; thence South 00°08'37" West along the West line of said Quarter Section a distance of 175 feet to point of beginning.

Tract Two

Lots Four (4), Five (5) and Seven (7) of Block Two (2), in Fleetwood Addition, a Subdivision in Midwest City, Oklahoma County, Oklahoma, as shown by the recorded plat thereof.

4

AND other such parcels or tracts of real property as provided in the Midwest City Downtown Urban Renewal Plan.

7.      In order to implement and facilitate the effectuation of the Midwest City Downtown Urban Renewal Plan hereby approved, it is found and determined that certain official actions must be taken by this body with reference, among other things, to changes in zoning, the vacation and removal of streets, alleys, and other public ways, the establishment of new street patterns, the location and relocation of sewer and water mains and other public facilities, and other public actions and, accordingly, this body hereby:

a.      Pledges its cooperation in helping to carry out the Midwest City Downtown Urban Renewal Plan;

b.      Requests the various officials, department, boards, and agencies of the locality having administrative responsibilities in the premises likewise to cooperate to such end and to exercise their respective functions and powers in a manner consistent with the Midwest City Downtown Urban Renewal Plan; and

c.      Stands ready to consider and take appropriate action upon proposals and measures designed to effectuate the Midwest City Downtown Urban Renewal Plan.

**PASSED AND APPROVED** by the Council of the City of Midwest City this 12th day of October, 2004.

EDDIE O. REED, Mayor

ATTEST:

JUDY REDMAN, Deputy City Clerk

APPROVED AS TO FORM AND LEGALITY this 12th day of October, 2004.

KATHERINE BOLLES, City Attorney

"I CERTIFY THAT THIS IS A TRUE AND LIKE COPY OF A INSTRUMENT ON FILE IN THE OFFICE OF THE CITY CLERK OF THE CITY OF MIDWEST CITY OKLAHOMA COUNTY STATE OF OKLAHOMA."

CITY CLERK

5

**RESOLUTION NO. URA 2004-07**

**A RESOLUTION AUTHORIZING THE ACQUISITION BY PURCHASE AND/OR PURSUIT OF CONDEMNATION PROCEEDINGS UPON CERTAIN PARCELS OF LAND AS AUTHORIZED BY THE MIDWEST CITY DOWNTOWN URBAN RENEWAL PLAN AND DIRECTING THAT ALL NECESSARY STEPS BE TAKEN TO ACQUIRE FEE SIMPLE TITLE OR A LESSER INTEREST IN AND TO SAID LAND**

**WHEREAS**, the City of Midwest City has adopted the Midwest City Downtown Urban Renewal Plan ("Urban Renewal Plan") in connection with its program for redevelopment of its historic downtown area (the "Project Area"); and

**WHEREAS**, the Midwest City Urban Renewal Authority has been authorized pursuant to the Urban Renewal Plan to assist in the redevelopment of the Project Area in support of the redevelopment activities previously authorized and undertaken pursuant to the Midwest City Downtown Redevelopment Project Plan adopted on August 27, 2002, pursuant to the Local Development Act, 11 O.S. 2001, § 850, *et seq.*; and

**WHEREAS**, acquisition of the property described in the attached Exhibit A has been authorized by the City Council of the City of Midwest City and has been determined to be necessary and appropriate to carry out the provisions of the Urban Renewal Plan; and

**WHEREAS**, both the City of Midwest City and the Midwest City Memorial Hospital Authority have made efforts to acquire the property by negotiation and mediation; and

**WHEREAS**, the City of Midwest City sought to condemn the property described in Exhibit A and on June 29, 2004, the Oklahoma Supreme Court in *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, decided that the City, in relying on its general municipal powers including those granted in 11 O.S. §§ 22-104 (3) and (8) to condemn property, "did not possess authority pursuant to its general eminent domain powers to condemn the property apart from those statutes regulating the joint conduct of municipalities and public trusts when removing blighted property and creating economic redevelopment;" and the Court specifically determined that the Oklahoma Urban Renewal Law, 11 O.S. §§ 38-101 – 38-123, is one of two such statutes under which the authority to condemn for redevelopment exists; and

**WHEREAS**, relying on the factors noted by the Oklahoma Supreme Court in its *City of Midwest City v. House of Realty, Inc.* decision, the City of Midwest City, in adopting the Urban Renewal Plan, reaffirmed its earlier determination that the Project Area is and was blighted within the meaning of the Oklahoma Urban Renewal Law, 11 O.S. § 38-101(8); and

**WHEREAS**, individuals, families and businesses that may be displaced as a result of carrying out the project will be provided relocation assistance in accordance with the Urban Renewal Plan, the Relocation Plan therein and the Relocation Policies and Procedures adopted by the Midwest City Urban Renewal Authority pursuant thereto; and

**WHEREAS**, the Midwest City Urban Renewal Authority will continue efforts to acquire the property by agreement; and

**WHEREAS**, the Board of Commissioners of the Midwest City Urban Renewal Authority deems it necessary and desirable to immediately acquire the property described on Exhibit A, located within the Project Area, to eliminate blighting conditions by redevelopment of the Project Area in accordance with the provisions of the Urban Renewal Plan;

**NOW, THEREFORE, BE IT RESOLVED** by the Board of Commissioners of the Midwest City Urban Renewal Authority that:

1.  The executive director and the legal counsel for the Authority are authorized and directed to undertake all necessary steps to acquire fee simple title or a lesser interest, as is appropriate in their judgment, in and to the parcels listed on Exhibit A, including the payment of fair market value therefor, the provision of relocation assistance in accordance with the Midwest City Downtown Urban Renewal Plan, the execution of any necessary and appropriate documents and the pursuit of

EXHIBIT 5

THIS IS A TRUE AND CERTIFIED COPY OF A DOCUMENT ON FILE IN THE OFFICE OF THE MIDWEST CITY URBAN RENEWAL AUTHORITY.

condemnation proceedings as authorized by the Midwest City Downtown Urban Renewal Plan and the approving City Council Resolution No. 2004-25.

2.     The executive director and legal counsel for the Midwest City Urban Renewal Authority are authorized and directed to undertake all necessary and appropriate actions to institute condemnation proceedings necessary to acquire a fee simple title or a lesser interest, as is appropriate in their judgment, in the name of the Midwest City Urban Renewal Authority to the properties described in Exhibit A, to enter an appearance in pending court proceedings previously filed by the City of Midwest City, to amend pleadings therein, to assume responsibilities of the City of Midwest City pursuant to such action, and to take such further action as may be necessary or appropriate to acquire fee simple title or a lesser interest, as is appropriate in their judgment, in and to the parcels listed on Exhibit A and to implement this resolution.

**ADOPTED AND APPROVED** by the Board of Commissioners of the Midwest City Urban Renewal Authority this 13th day of October, 2004.

MIDWEST   CITY   URBAN   RENEWAL AUTHORITY

DAVE HERBERT, Chairman

ATTEST:

TOMMY MELTON, Secretary/Treasurer

I, Tommy Melton, secretary/treasurer of the Board of Commissioners of the Midwest City Urban Renewal Authority, certify that the foregoing Resolution No. URA 2004-07 was properly adopted at a special meeting of the Board of Commissioners of the Midwest City Urban Renewal Authority held on the 13th day of October, 2004, in the offices of the Authority, 100 North Midwest Boulevard, Midwest City, Oklahoma; that a quorum was present at all times throughout the meeting, and that a legally sufficient number of the members of the Board of Commissioners voted in favor of the resolution.

Tommy Melton, Secretary/Treasurer

(SEAL)

2

## EXHIBIT A

Tract One

Part of the Southwest Quarter (SW/4) of Section Ten (10), Township Eleven (11) North, Range Two (2) West of the Indian Meridian, Oklahoma County, Oklahoma, more particularly described as follows:  Beginning at a point on West line of said Quarter Section North 00°08'37" East a distance of 330 feet from SW corner of said Quarter Section; thence South 89°30'37" East a distance of 440 feet; thence North 00°08'37" East a distance of 175 feet; thence North 89°30'37" West a distance of 440 feet to a point on West line of said Quarter Section; thence South 00°08'37" West along the West line of said Quarter Section a distance of 175 feet to point of beginning.

Tract Two

Lots Four (4), Five (5) and Seven (7) of Block Two (2), in Fleetwood Addition, a Subdivision in Midwest City, Oklahoma County, Oklahoma, as shown by the recorded plat thereof.


AND other such parcels or tracts of real property as provided in the Midwest City Downtown Urban Renewal Plan.